[No. 1430.]

THE STATE OF NEVADA, EX REL. GEORGE D. PYNE, RELATOR, v. CHARLES A. LAGRAVE, STATE CONTROLLER, RESPONDENT.

1—STATUTES 1895, PAGE 109, SECTION 11, CONSTRUED.—Under section 11 of the Statutes of 1895, page 109, declaring it the duty of a county to provide an armory for militia companies within it, and providing for payment of claims for expenses of procuring the same, such claims to be audited and approved by a board of military auditors, and the presentment of such claims to the state controller and payment thereof by the state treasurer, the "expenses" provided for are *actual expenses* incurred in procuring an armory. On this point the petition in this case, being silent, is insufficient, as it fails to state facts showing that the demand was a legal one against the state.

2—MILITIA CLAIM—AUDITING AND APPROVAL OF BY BOARD OF MILITARY AUDITORS, DO NOT CONSTITUTE IT A LEGAL CLAIM AGAINST THE STATE.—A claim against the state for expense of providing an armory, if not shown to be properly chargeable against the state, does not become a legal demand against it simply because the claim has been regularly audited and approved by the board of military auditors.

3—MANDAMUS—PETITION FOR, WHAT MUST AFFIRMATIVELY APPEAR IN.—A petition for *mandamus* must show on its face a clear legal right to that for which it is sought in the proceeding.

ORIGINAL PROCEEDING on application for writ of *mandamus*.

The facts are sufficiently set forth in the opinion.

Argued orally.

*J. Poujade*, for Relator.

*Robt. M. Beatty*, Attorney-General, for Respondent.

By the Court, BELKNAP, J.:

This is an application for a writ of *mandamus* requiring respondent as controller of state, to draw his warrant in favor of relator, as secretary of Company B, first regiment,

Nevada National Guard, for the rent of an armory for the company for the month of April, 1895. The statute under which the claim is made is as follows: "Sec. 11. It shall be the duty of the board of county commissioners of any county in which public arms, accoutrements, or military stores are now had or shall herereafter be received for the use of any volunteer organized militia company to provide a suitable and safe armory for organized militia companies within said county. All claims for the expense of procuring and maintaining armories shall be audited and approved by the board of military auditors, and upon approval of such claims they shall be presented to the state controller, who shall draw his warrant upon the state treasury for the amount so approved, and upon presentation of said warrant, the state treasurer shall pay the same out of the general fund. Such expenses shall not exceed seventy-five ($75) dollars per month for any company except that each company regularly drilling with field pieces or machine guns, and using horses therewith, may be allowed an additional sum not to exceed twelve and 50-100 ($12 50) dollars per month for each piece or gun." (Stats. 1895, p. 109.) In his petition relator states that the county commissioners of Storey county provided an armory for the use of the company during the period mentioned, and that a claim amounting to the sum of $75 therefor was audited and approved by the board of military auditors and the state board of examiners, etc. It will be observed that the statute provides that the county commissioners shall provide a suitable and safe armory, but whether they, or the owners of the armory building, or the company, shall present the claim for the expense of so doing, is not clear. But, aside from this, it is beyond controversy that it is only the actual expense incurred in procuring and maintaining an armory, not to exceed $75 a month, that shall constitute a charge against the state. Upon this point the petition is silent. It says nothing about the actual expense, nor that any such expense has ever been incurred; and without such statement the petition fails to state facts showing that the demand is a legal one against the state.

Claims that are not properly chargeable to the state do not become legal demands simply because audited and approved

by the boards mentioned. All the decisions agree that the writ will not issue unless the applicant shows a clear legal right to the relief demanded. Thus, in *Illinois & M. Canal Trustees* v. *People*, 12 Ill. 248, where a question involving a similar principle arose, the court said: "It is insisted that the alternative *mandamus* is too defective to sustain the judgment. An alternative *mandamus* becomes the foundation of all the subsequent proceedings in the case. It answers the same purpose as the declaration in ordinary actions. It must show on its face a clear right to the relief demanded by the relator. It must distinctly set forth all the material facts on which he relies, so that the same may be admitted or traversed. The defendant is called upon to perform the particular act sought to be enforced, or by a return deny the facts alleged in the writ, or state other matters sufficient to defeat the relator's application. * * * In this case, the alternative *mandamus* is fatally defective. It does not set forth the facts on which the relators rely. * * * This is like the case of a writ of error brought to reverse a judgment entered on a declaration showing no cause of action. * * * The proceedings fall, for want of a proper foundation to sustain them." Again, in *Lavalle* v. *Soucy*, 76 Ill. 467, it is said: "A writ of *mandamus* will be awarded only in a case when the party applying for it shows a clear right to have the defendant do the thing which he is sought to be compelled by *mandamus* to do. (*People* v. *Glann*, 70 Ill. 232.) The petition must show upon its face a clear legal right to the relief demanded, and every material fact on which the petitioner relies must be distinctly set forth."

Having reached the conclusion that the writ must be dismissed, it is not necessary now to determine the further question whether an appropriation for its payment has been made. Writ denied.