STATE OF NEVADA, EX REL. WILLIAM SCHAW, ET
AL., RELATORS, *v.* W. H. NOYES, ET AL., AS THE CITY
COUNCIL OF THE CITY OF RENO, RESPONDENTS.

MUNICIPAL CORPORATIONS — CONTRACTS FOR IMPROVEMENTS—MANDAMUS.
In pursuance of an advertisement of the city council of the city of
Reno for bids for the construction of a system of city water works,
the relators herein, among others, submitted a bid; before the bids
were acted upon an action was commenced against the city council
to enjoin it from letting a contract under any of the bids. Upon
the hearing of the application for a temporary injunction, it
appeared that the city council did not intend to accept any of the
bids in the form presented, but that it had resolved to enter into a
contract with relator upon the basis of certain proposed modifica-
tions of its bid, "as soon as the council was in law, free and unre-
strained to do so," whereupon it was ordered that before executing
any such contract a copy of the proposed contract should be served
on the plaintiff in the injunction suit, and that within five days
thereafter said plaintiff might institute such proceedings to restrain
the execution thereof as it might be advised. Thereafter, the coun-
cil adopted an order approving the proposed contract containing
the modifications suggested in the previous resolution of the coun-
cil and directing that the contract be executed "as soon as the city
council was, in law, free so to do," which modifications were then,
for the first time, consented to by the relator: *Held*, that there was
no such an acceptance of relator's bid as would, independent of sub-
sequent action, create any liability, or right of action whatever to
compel the city council by mandamus to execute a contract for the
construction of the water works.

MANDAMUS. Mandamus is never granted in anticipation of a supposed omission of duty, however strong the presumption may be that the persons whom it is sought to coerce by the writ will refuse to perform their duty when the proper time arrives, nor will the writ issue unless the relator shows a clear legal right to the relief demanded.

JUDGES—INTEREST IN ACTION—DISQUALIFICATION. General Statutes (1885), sec. 2464, prohibiting a judge from acting in any action in which he is interested, does not disqualify a judge, who is a property owner and taxpayer in the city of Reno, from sitting in a cause to enjoin the city from executing a contract for the construction of water works, to be paid for with municipal bonds, since, under the act incorporating the city, the city council is not expressly authorized to tax property within the city to pay the interest and ultimately redeem the bonds, and it may not be necessary for it to do so under any implied power, for the reason that the council is authorized to impose rates for the consumption of water.

ORIGINAL PROCEEDING by the State, on the relation of William Schaw and others, for writ of mandate to W. H. Noyes and others, constituting the City Council of the City of Reno, to compel respondents to execute a certain contract for the construction of a system of municipal water works. E. R. Dodge, Intervenor. Dismissed.

The facts sufficiently appear in the opinion.

*R. M. Clarke* and *J. A. Goodwin,* for Relators:

I. The judge who presided at the trial, named in the answer to our petition, was disqualified under the statute of the state, and was not, being disqualified, competent to preside in the case, or to make any valid order in or about it. Our statute, in paragraph 2464 of the General Laws, provides: "A judge shall not act as such in an action or proceeding to which he is a party, or in which he is interested." * * * (*Meyers* v. *City of San Diego,* 53 Pac. 434; *Hawkins* v. *Howard,* 79 Mich. 642.)

II. Did we appear? Could we appear? Could we waive that point? Are we not permitted a hearing now in order to maintain and enforce our rights under the law? Are we not permitted to show that this thing which is sought to be interposed is an order made by a judge who was·disqualified? Can we, who had no opportunity to make the point, be bound by the action of a judge, who was disqualified, by a decree which is a void decree? Is there any doubt, was there ever

any doubt, that a void instrument can be attacked? Can it be attacked by anybody in any proceeding? The doctrine of estoppel does not bind us. There is no estoppel here. (79 Mich. 642; *Oakland* v. *Oakland Water Front*, 118 Cal. 249; *Adams* v. *Minor*, 53 Pac. 815; *City of Austin* v. *Nalle*, 85 Tex. 520; 23 Tex. 105; 49 N. H. 52; *Meyers* v. *San Diego*, 53 Pac. 434; Freeman on Judgments, 4th, ed., vol. 1, sec. 146; High on Injunctions, sec. 1425; *Frevert* v. *Swift*, 19 Nev. 363, 364.)

III. The question as to the authority of a judge who is disqualified to preside in a case cannot be waived. The parties to a suit, by their most solemn stipulation, can never confer upon a disqualified judge the power or authority to preside in a case. Judge Cheney, as a citizen and taxpayer, could have brought the suit. He may as well have been the plaintiff in the court below as the Reno Water, Land and Light Company. If he had brought the suit, and had still presided, can there be a pretense that his judgment could have been of any validity; can there be a pretense that it could have bound anybody; that there can be conferred upon one of the parties to the suit power to render a valid judgment in that suit? Now, this question is abundantly decided, and it is in fact a general principle that the jurisdiction of the court, the power or authority of the court or judge to decide, can never be waived, but can be taken up at any time; that is one of the things that never can be waived. (Freeman on Judgments, 4th ed., vol. 1, sec. 146.)

IV. The city of Reno being a municipal corporation, created by an act of the legislature, is a creature of the legislature and derives all its powers, rights and franchises from legislative enactment or statutory implication. (15 Ency. Law, p. 1039; *State* v. *Rosenstock*, 11 Nev. 128, 140; *Tucker* v. *Virginia City*, 4 Nev. 20, 26; *Virginia City* v. *Chollar-Potosi*, 2 Nev. 86.)

V. The act defining the powers and duties of boards of county commissioners has no application to the powers and duties of the city council of Reno, unless there is something in the act itself to make it applicable, or something in the general legislation which makes these powers applicable. The charter itself is the law, and that charter, according to all authorities, must be strictly construed in determining the

power. The city council have no power except that which is conferred. This principle is laid down in the 2d Nevada and in the 11th Nevada in the words: · "A municipal corporation possesses and can exercise such powers only as are expressly 'conferred by the law of its creation, and such as are necessary to the exercise of its corporate powers, the performance of its corporate duties, and the accomplishment of the purpose for which it was created."

VI. Mandamus is a remedy which will lie to compel the city council of Reno to execute the contract, to prepare and deliver the bonds in pursuance of the terms of the contract. (Sections 3469 and 3470, General Statutes of Nevada; *Mau* v. *Liddle,* 15 Nev. 271, 275; *Humboldt Co.* v. *Churchill Co.*, 6 Nev. 30.)

VII. Counsel for plaintiffs does not claim that defendants exceeded their jurisdiction in refusing to comply with the statute. They only rejected a bid which they were commanded to acccept. Compelling the performance of such duties is the true and only office of the writ of mandamus. The law makes it their duty to perform this contract, having accepted the bid. Having entered into the contract, they must perform it; they must deliver these bonds to us; it is a specific certain thing which they are bound to deliver, and there is no way that that contract may be performed except by delivering the bonds to us according to the agreement. They did accept our bid; it was the lowest and best. (*Smalley* v. *Yates*, 36 Kan. 519; 33 Ohio St. 169; 64 Ohio L. 83, sec. 7; 11 Kan. 67; 12 Kan. 127; 33 Kan. 177; 10 Wend. 245; 1 Cow. 510; 5 Hush. 125.)

VIII. It has been contended that the relators have no contract, that there is no contractual relation existing between the city of Reno and the firm of Schaw, Ingram, Batcher & Co. The petition sets forth after a preliminary proceeding that the city council advertised for proposals with plans and specifications for the construction of a water system. It also sets forth that the firm of Schaw, Ingram, Batcher & Co., in response to these proposals, submitted to the council of the city of Reno bids and proposals with plans and specifications. That thereafter the city council accepted the bid of Schaw, Ingram, Batcher & Co. with cer-

tain modifications, which modifications are set forth in the resolution set forth in our petition. The council provided that the bid of Schaw, Ingram, Batcher & Co. shall be accepted, and that a certain reservoir that is provided for in the plans and specifications, and certain pipe in the city shall be eliminated, and they shall receive a less amount of bonds, which less amount to be determined by the value of the work eliminated. When the common council made that elimination, and made that acceptance, Mr. Schaw was in the council chamber, and they asked him if he accepted those modifications, and he said that he did. At that point there was a contract. There was a valid and binding contract, one that was entirely executed, the performance of which would be compelled by the court. (*Argent* v. *Ladd*, 16 Cal. 256.)

IX. A contract is the meeting of the minds of the contracting parties when the bid of the successful bidder is accepted. The statute under which the common council was proceeding in this matter provided that they should accept the proposal of that bidder who proposed to build the best system of water works for the least amount of bonds. The citation of authorities in *State* v. *Sadler*, under the statute which provides that the commissioners of the county shall let the contract to the lowest bidder, presents questions that cannot be raised in this case. Here we have an entirely different provision of law, an entirely different enabling act from that act under which they were proceeding in the Sadler case. The legislature here, by conferring authority under the act, were attempting to get the best system that they possibly could for the city of Reno. It provided that they should advertise for proposals with plans and specifications for the construction of that system. They were bringing in the talent of the country, and giving to the city council of the city of Reno the result of the experience of engineers in the construction of a system of water works, and that they should accept the best system that was proposed for the least amount of bonds. The common council at its meeting held on the 2d of July, when it opened its bids, passed a resolution set forth in that petition, that they accepted the bid of Schaw, Ingram, Batcher & Co., that being, in their minds,

the best bid of all the bids presented, and the best bid for the least amount of bonds. They then assumed contractual relations between the city council and Schaw, Ingram, Batcher & Co. The city council now refuse to carry out their part of the contract, and we come before this court and ask for its mandate.

X. It is also contended that the court, by its writ of mandate, will not command the doing of anything until it is due, until the time has arrived for the execution of a particular act by the officer that it is intended to command. In this particular instance, it is claimed that the city council of the city of Reno are not required to execute this contract, or deliver its bond, or go ahead and fulfill the contract that they have entered into with Schaw, Ingram, Batcher & Co., because, in this particular, this firm has a contract that is set up in the petition where it is provided that they shall not proceed until they are free in the law so to do. Our contention throughout this case has been that the judgment of the court below is absolutely void; it is binding upon nobody. If it is a void judgment, it certainly cannot be an excuse of the common council of the city of Reno for not proceeding to the execution of this contract.

*A. E. Cheney, O. J. Smith* and *Wren & Julien,* for Respondents:

I. It will be observed from the record that when this proceeding was commenced there was and still is pending in this court an action in which is directly involved the validity of the very contract, the execution of which is here sought to be commanded. It will be also observed that when this proceeding was commenced the respondents herein were, and still are, enjoined by the decree of a court of competent jurisdiction from doing the identical thing which the alternative writ issued herein commands them to do. It will be further remembered that the validity of that injunction is the question involved—in fact, the only question in that action, now pending in appeal to this court. Therefore, the main issue presented by this proceeding, and which is raised by the demurrer to the answer of the respondent is:

Will this court, by its writ of mandate, compel the respondents, as municipal officers, to carry out a resolution by which they agreed to enter into a contract for public improvements, when there is pending and undetermined in this court, and being prosecuted by the respondents, an appeal from a judgment and decree of a court of competent jurisdiction, especially enjoining the respondents, as such officers, from doing the very thing which the requested writ would order them to do?

II.   The alternative writ commands the respondents to do two things, viz.: execute the contract, and execute and deliver the bonds.  As to the bonds it is plain there is no present right to have them executed or delivered.  Until there has been an execution of the agreement by both parties, and a presentation and approval of the bond required by the contract of the relators, there is no duty on the part of the respondents to execute or deliver the bonds of the city of Reno.

III.   "Mandamus is never granted in anticipation of a supposed omission of duty, however strong the presumption may be that the persons whom it is sought to coerce by the writ will refuse to perform their duty when the proper time arrives.   It is, therefore, incumbent on the relator to show an actual omission on the part of the respondent to perform the required act, and since there can be no such omission before the time has arrived for the performance of the duty, the writ will not issue before that time.   In other words, the relator must show that the respondent is actually in default in the performance of a legal duty then due at his hands and no threats or predetermination can take the place of such default before the time arrives when the duty should be performed, nor does the law contemplate such a degree of diligence as the performance of a duty not yet due."   (*State* v. *Rising*, 15 Nev. 164; *State* v. *Piper*, 11 Nev. 233; 2 Spell. Extr. Relief, 1385; High, Extr. Rem., sec. 12.)

IV.   The proceedings should be dismissed because the alternative writ cannot be made peremptory, as it includes the doing of something to which the respondents are not yet entitled, and seeks to command before there has been a vio-

lation of any present legal right, and the alternative writ must stand or fall as a whole. (High, Extr. Leg. Rem., sec. 548.)

V. The writ of mandate lies only to compel the performance of an act which the law "specially enjoins as a duty resulting from an office, trust or station." (Gen. Stats. of Nev. 3469.) The object of the writ is to compel the performance of official duties created by statute, or necessarily incident to office, and does not include rights arising from contract obligations, especially where the contract is executory. (Merrill on Mand., sec. 16; 2 Spell. Extr. Relief, sec. 1379, 1438; 14 Am. & Eng. Ency. 104; *State* v. *Z. & M. Turnpike Co.*, 16 Oh. St. 308; High, Extr. Leg. Rem., sec. 25; *State* v. *Bohannon*, 39 Mo. 375; *Benson* v. *Paull*, 6 El. & Bl. 273; *Marshall* v. *Clark*, 22 Tex. 23; *Badger* v. *City of New Orleans*, 21 So. Rep. 870.)

VI. The writ is rarely, if ever, issued to compel the making of a contract for public improvements, as the letting of such contracts necessarily involves large discretionary powers. (2 Spell. Extr. Relief, sec. 1469; 14 Am. & Eng. Ency. Law, p. 150; *State* v. *Comrs. of Hamilton Co.*, 30 N. E. 785.) Especially if there is a doubt as to the mode in which the duty is to be performed. (High, Extr. Leg. Rem., sec. 423; *State* v. *Washington County*, 2 Chand. 247.)

VII. That a judgment rendered by a judge who is disqualified is void, is not questioned. (*Frevert* v. *Swift*, 19 Nev. 363.) But it is denied in this proceeding that the judge, who tried the action of the *Reno W. L. & L. Co.* v. *City of Reno*, was disqualified, that the relators in this proceeding, under the pleadings, can raise that question, or that it is a material issue.

VIII. The interest which disqualifies a judge must be direct, certain and pecuniary. It "must occur upon the event of the suit, not result remotely, in the future, from the general operations of law and government upon the status fixed by the decision." (12 Am. & Eng. Ency. 46; *City of Oakland* v. *Oakland W. F. Co.*, 50 Pac. 268; *City of Oakland* v. *Oakland W. F. Co.*, 118 Cal. 249.)

IX. The records of this court show that its justices have, without question, sat in tax and other cases wherein they, as

taxpayers, were remotely affected by the result of the litiga-
tion. If the contention of petitioner is true, and this con-
tract related to a state, instead of city improvement, there
would not be a qualified judge in any court to restrain the
enforcement of a contract no matter how illegal or fraud-
ulent it might be. If perchance this agreement had been
made by the city council of Carson City, no doubt a majority
of this court, under the contention of the petitioners, would
be disqualified from issuing the writ of mandate in this pro-
ceeding. The administration of the law is, and must be,
practical, and no remote, contingent or possible interest,
which may affect the judge in common with the taxpayers
of the community, will debar his acting any more than it
would disqualify his neighbors as jurymen to try the issues
of the fact. While the city charter provides that the city
council shall provide for the payment of the principal and
interest of the bonds to be issued for water works, it also
provides that they " shall have the power to provide by
ordinance for the distribution of water to the inhabitants of
the city upon such reasonable terms as they shall deem
expedient." (Stats. 1897, p. 59, sec. 37.)

X. It is the contention of the city council that municipal
water works in the city of Reno can be made not only self-
sustaining but a source of revenue. By reference to the
record, it will be seen, at pages 82, 83, 86 and 87, that the
city council, by its answer, assert not only that the contem-
plated system of water works will be self-sustaining but that,
under the city charter, no levy could be made in addition to
what had already been made, and that no burden would or
could be put upon the water company, or the intervenor
as taxpayers, by reason of letting the proposed contract.
Whether the issuance of these bonds will ever result in any
additional burden to the taxpayers is wholly contingent and
uncertain, depending upon whether the power to collect
rates is exercised, and the sufficiency of the rate to provide
a sinking fund for the payment of these bonds. While the
city council are to provide for their payment, there is no
requirement that the money shall be raised by a tax levy.
The grant of a power to fix water rates, so closely connected
with the direction to provide a sinking fund, clearly associ-

ates the end with the means contemplated to accomplish it. At all events there is no direct and certain pecuniary advantage or loss which occurs on the event of this suit which makes a taxpayer disqualified as a judge, because of interest.

XI.  Recurring to the main question, we think the authorities clearly show that the writ does not lie in this case for several reasons: "The writ of mandate is a remedy to compel the performance of a duty required by law, where the party seeking relief has no other legal remedy and the duty sought to be enforced is clear and indisputable.  Both requisites must concur in every case." (*Bayard* v. *White*, 127 U. S. 246–250; *International Con. Co.* v. *Lamont*, 155 U. S. 308.) "All the decisions agree that the writ will not issue unless the applicant shows a clear legal right to the relief demanded." (*State* v. *LaGrave*, 22 Nev. 419.)

XII.  As stated above the right sought to be enforced must be not only a clear legal duty, "specially enjoined by law," but it must be indisputable—*i. e.*, not in dispute—and the pendency of an action in which the existence or legality of the right sought to be enforced is directly involved, has ever been held sufficient reason for denying the writ.  It is not the object or function of the writ to supplant the ordinary course of the law for the determination of litigated questions or the correction of judicial errors.  (2 Spell. Extr. Relief, secs. 1443, 1485, 1500, 1525; *Badger* v. *City of New Orleans*, 21 So. Rep. 870; *Oakes* v. *Hill*, 8 Pick. 46; *Mills* v. *Brevoort, Judge*, 47 N. W. 128; *Ex Parte Hughe*, 114 U. S. 147; *People* v. *Newton*, 27 N. E. 370; *French* v. *South Haven*, 48 N. W. 174; *Foster* v. *Angell*, 33 Atl. 406; *Leavitt* v. *Judge*, 18 N. W. 374; *People, ex rel.* v. *Wiant*, 48 Ill. 264; *Com.* v. *People*, 99 Ill. 587; *People* v. *Newton*, 11 N. Y. S. 782; *State* v. *City of Mamitowoc*, 52 Wis. 423.)

XIII.  The writ never lies to compel a party to do an act which he has been enjoined from doing.  (High, Extr. Legal Rem., secs. 23, 259; 2 Spell. Extr. Relief, secs. 1378, 1402; *Ohio & Ind. R. R. Co.* v. *Comrs. Wyandot Co.*, 7 Oh. St. 278; *State, ex rel. Mills* v. *Kispert*, 21 Wis. 387; *Ives* v. *Murkegon Circuit Judge*, 40 Mich. 63; *People, ex rel. Humphrey* v. *Supervisors*, 30 Hun, 147; *People, ex rel. Sullivan* v. *Hake*, 81 Ill.

540; *Ex Parte Fleming,* 4 Hill, 581; *Livingston* v. *McCarthy,* 20 Pac. 478; *Mills* v. *Brevoort, Judge,* 47 N. W. 128.)

XIV.   The granting of the writ is controlled by the sound discretion of the court, especial care being taken that the writ shall not be the means of enforcing a doubtful right, or injurious to public interests, determinative of the rights of parties not before the court, or where it would not be effectual.   (2 Spell. Extr. Relief, sec. 1370, 1371, 1372; *Redfield* v. *Windom,* 137 U. S. 644; *Bayne* v. *Ryan,* 100 Cal. 265, 37 Pac. 707.)

XV.   It must be clearly apparent to the court that, even if it is admitted that the action of the district court in enjoining these respondents from entering into this contract is void, because of any disqualification of the judge who granted the injunction, there still remains the controversy—the action is still pending in which the validity of this proposed contract is the issue; that the right of these relators to have this contract extended is still in dispute and the validity of their claim hereto is still in question.

By the Court, MASSEY, J.:

Original application for writ of mandate commanding the respondents to execute a certain contract for the construction of a system of water works, and to compel the president of said council and the clerk of said city to execute said contract, and to compel said city council to execute and deliver to the relators certain bonds of said city pursuant to said contract.

The petition, among other matters, recites:

That on the 13th day of September, 1897, the city council of the city of Reno called, by resolution, an election to be held in the city of Reno on the 7th day of October, 1897, for the purpose of submitting to the electors of said city a proposition to issue the bonds of said city, in the amount of $130,000, for the purpose of procuring water and the erection of water works for the city.

That all necessary steps were taken for holding the election pursuant to said order, by the giving of due notice thereof, defining the polling places, which notice was published as required by law.

That in accordance therewith the election was held at the time and in the manner required. That on the 11th day of April, 1898, a canvass of the votes cast at said election was made by the city council, from which it was found that a majority of the votes cast were in favor of said proposition.

That on the 11th day of May, 1898, in pursuance of said election, and in conformity with law, the city council published a notice to the effect that bids would be received until June 13, 1898, for the purchase of bonds, and also written proposals, with plans and specifications, to construct a water system for the city of Reno, to be paid for with the bonds of said city, which bids or proposals should be sealed, and addressed to the proper officer.

That in answer to said notice the relators, on or about the 13th day of June, 1898, submitted to the city council written proposals, with plans and specifications, to construct a water system for the city, to be paid for with the bonds of the city, in conformity with the notice.

That at a meeting of the city council held on the 2d day of July, 1898, the council passed a resolution accepting the bid of the relators to construct a water system for said city, subject to certain modifications, which resolution was in the words and figures following, to wit: "*Resolved*, That it is the sense and judgment of this city council that the bid of Messrs. Schaw, Ingram, Batcher & Co. to construct a water system for the city of Reno from bar B, on the Truckee river, composed of the material mentioned in said bid, and of converse patent lock joints, be accepted, and a contract entered into with the said bidder for such construction as soon as the city council is, in law, free and unrestrained so to do, subject to the following modifications: * * *; that Messrs. Torreyson & Summerfield be, and they are hereby directed, in connection with the committee of water, fire and lights, to draft and submit to this council, at a special meeting to be held at 8 o'clock p. m. on Tuesday evening, July 5, 1898, a proposed contract embodying the terms of the foregoing resolution."

That at a meeting of said council held on the 7th day of July, 1898, the said council adopted the following resolution, to wit: "*Resolved*, That the proposed contract with Schaw,

Ingram, Batcher & Co. for the construction of a water system for the city of Reno, Nevada, * * * submitted to, and read in the presence of, this city council, be, and the same are hereby approved, and their execution is hereby agreed upon, to be performed as soon as the city council· is, in law, free so to do."

A copy of the approved contract was fully set out in the petition. By the terms of the agreement, in part, it is provided that the relators should be paid for their work in bonds of the city of Reno, bearing interest, as follows: $25,000, or the nearest approximate amount thereto, at the time of the execution of the agreement; $25,000 at the time of the delivery of all of the material for the water system at Reno, Nevada; the residue in installments of different amounts at subsequent dates. The relators, by the terms of the agreement, were required, at the time of its execution, to make and deliver to the city council a good and sufficient bond, in the sum of $50,000, conditioned for the faithful performance of the obligations imposed upon them by agreement.

The other stipulations of the agreement are not material to the determination of the questions to be decided in this action, and are therefore omitted. There is also an averment that the relators at the time agreed to all the terms of the proposed contract, and are willing, and have ever since been willing, to enter into the same; that the relators thereafter demanded of the city council that it comply with, and act in accordance with, its proposals, and execute the contract and deliver to the relators the amount of bonds at the time and in the manner provided in said contract; that the said city council was at the time of the commencement of this action attempting to let to other persons the contract for the construction of said water system, in contravention of its acceptance of the bid of the relators; and that the said council was, at the time of the commencement of the action, in law, free and unrestrained to execute the contract.

Upon the application, the alternative writ of mandamus issued out of the court, to which the respondents answered, in effect, that on the 24th day of June, 1898, the Reno Water, Land and Light Company, a corporation, commenced an action in the Second Judicial District Court of Nevada

against the respondents, as the city council of the city of
Reno, to restrain and enjoin such council from entering into
the alleged and proposed contract with the relators, and from
proceeding further therein; that, upon the final hearing and
trial of said action, judgment was rendered by said court in
favor of the said corporation on the 4th day of August, 1898,
by which judgment and decree the respondents were forever
restrained and enjoined from entering into the proposed
alleged contract with relators, and from proceeding further
in the matter; that said judgment, order, and injunction
have never been revoked or modified, and are now in full
force, and binding upon the respondents; that an appeal has
been regularly taken from said judgment, and the same is
now pending and undetermined in the supreme court.

It is further shown by the return and answer that the
respondents denied that the relators ever gave them notice of
their acceptance of the terms of the proposed contract, or of
their desire to enter into the same, or of their acquiescence
in, or acceptance of, the modification thereof, except that on
the 12th day of October, 1898, and long after the rendition
of the judgment set up, the relators caused a notice and
demand to be served upon respondents, a copy of which was
attached to the return.

It is further shown by the answer and return that the city
council of the city of Reno, at a meeting held on the 2d day
of November, 1898, adopted a resolution to the effect that no
further action should be taken by the city council in respect
to the matter of receiving bids or proposals for the construc-
tion of water works for said city until the Supreme Court of
the State of Nevada had decided the matter relating thereto
then pending in said court.

It is further alleged that the city council have at no time
intended, nor do they now intend, nor are they endeavoring,
to contract with any person or persons for the construction
of water works for said city, nor will they enter into any
such contract, until the pending appeal aforesaid shall have
been finally determined.

The relators interposed a demurrer to the answer, but we
do not deem it necessary to consider separately the questions
presented by the same, but such questions, as far as may be

necessary, will be incidentally determined in the discussion of the case upon its merits.

Under the issues made by the pleadings, it was shown by the testimony of Mr. Schaw, one of the relators, that he was present at the meeting of the city council held on July 7, 1898, at which the contract, as prepared by Messrs. Torreyson & Summerfield, under the direction of the resolution of the city council adopted on the 2d day of July, 1898, and as set out in the petition herein, was read, and that he, as the senior member of the firm of Schaw, Ingram, Batcher & Co., the relators herein, in response to a direct question from the president of the city council, accepted the terms of the proposed contract.

The action of the Reno Water, Land and Light Company against the city council to restrain it from entering into a contract for the construction of a system of water works under the proceedings had by the council for that purpose, and under which the relators claim their rights, was instituted on the 25th day of June, 1898. That action was called for the hearing of the motion of the plaintiff for a temporary injunction on the 1st day of July, 1898, at which time, upon statement of counsel for the defendant to the effect that the city council did not intend to accept any of the bids, in the form in which said bids were presented, but that it would probably enter into a contract with some one of the bidders upon the basis of the modification thereof, it was stipulated that the further hearing of the action should be continued until further orders; that the city council, before entering into or executing any contract for the construction of a system of water works, should serve a copy of such proposed contract upon the plaintiff; that the plaintiff should, within five days after such service, institute such proceedings to restrain the execution thereof as it may be advised; and that after the commencement of said proceedings the city council would not take any steps which would change the rights of the parties respecting such contract and the execution thereof until the decision of such action.

The stipulation further provided that it should be entered as an order of court in the action. Thereafter, on the 13th day of July, 1898, the plaintiff in the action filed an amended

complaint, by which it sought to restrain the city council
from entering into the contract for the construction of the
system of water works provided for by the terms of the con-
tract under which relators claim. The answer of the city
council was filed, trial had upon the issues, and the judg-
ment rendered as set out in the answer and return of the
respondents herein. The motion of the city council for a new
trial was overruled, and an appeal taken therefrom, and from
the judgment, to this court. It is also shown by stipulation
that A. E. Cheney, the district judge who presided at the
trial of that action, and rendered the judgment therein, was
an inhabitant of the city of Reno, and the owner of a large
quantity of property therein subject to taxation.

Whatever power or authority the city council of the city of
Reno may have to enter into the contract set up in the peti-
tion will be found in the provisions of the act incorporating
that city. (Stats. 1897, p. 50.)

The meeting of July 2, 1898, was regular, and the city
council, under the provisions of that act, was authorized to
accept the bid of the relators, and to make a valid and bind-
ing contract respecting the matters shown. Was such con-
tract made or was such action taken by the city council and
the relators at that meeting, standing alone, as would bind
the city council and the relators, or create any liability
under which the relators could claim any right of action?
We think not. The order of the city council set up in the
petition, and admitted by the respondents, was not such an
acceptance of relators' bid as would, independent of subse-
quent action, create any liability or any right of action what-
ever. The bid of relators was not unconditionally accepted
by the city council. It was accepted subject to certain mod-
ifications specifically set out in the order itself. No claim
or showing is made, either by the pleadings or the evidence,
that relators consented or agreed to, or were willing to be
bound by, the modifications made; hence there was not, and
could not be, any contract or liability under this order. On
the contrary, it was shown by the evidence of Mr. Schaw, one
of the relators, acting for all, that consent to the modifica-
tions suggested was not given by the relators until the mat-

ter was again considered by the city council and relators at the meeting of July 7, 1898.

It is also shown that the city council did not intend to bind itself or the city by the order of July 2d, or give to the relators immediate and unconditional rights of any kind under their bid and the acceptance thereof, as the order expressly limits the time for entering into the contract with the relators for the construction of the system of water works to such time as the city council was free and unrestrained so to do. At the time this order was made an action was pending in a court of competent jurisdiction to restrain the city council from accepting the relators' bid, and, on the day immediately preceding the one on which the order was made, the city council had, upon a showing made in that action by it, to the effect that it would not accept the bid of the relators, except in a modified form, entered into a binding stipulation with the plaintiff in the action not to enter into or execute any contract on such bid, as modified or otherwise, until after it had served a copy of such proposed contract upon the plaintiff, that the plaintiff should have five days after such service to institute proceedings to restrain the execution of such contract, and that after the commencement of such proceedings the city council would not take any proceedings in the matter which would change the status or the rights of the parties to the action respecting the contract and the execution thereof until the decision of the action. This stipulation was made in open court, and entered as an order thereof.

It is therefore clear that the order of the council of July 2d is based upon this action, and the stipulation of the council made therein, and that it did not intend to create any liability or rights under the order until such restraint was removed. At the meeting of July 7, 1898, the city council adopted an order approving the proposed contract, containing the modifications suggested in the order of July 2d, which modifications are shown to have been for the first time consented to by the relators. Without further restrictions or conditions, this order might have created such rights as would entitle the relators to the relief sought; but the order shows that it was not without condition, was not absolute,

and was not intended to be absolute and final by the city council. By express terms the execution of the contract is agreed upon to be performed "as soon as the city council is, in law, free so to do." The city council must have had in view the effect of its stipulation in the action above referred to when it adopted this resolution. Within the five days fixed by the stipulation, the plaintiff filed in said action an amended complaint, setting up the same contract which the relators seek to have executed by this action. A trial was had in the action, and the judgment set out in the answer herein was rendered and entered.

It will therefore be seen that the action of the city council, by resolution adopted in regular manner, upon which relators rely, and which is the only evidence of any contractual liability upon the part of the city, and to which the relators must have assented, if they can claim any right of action thereunder, created such liability upon condition only. The city council did not agree to execute the contract that day, upon demand, or at any specified time. It might, under the conditions shown, never execute the contract. The relators must have known the conditions of both resolutions. They are claiming rights under both, and, if the respondents are liable under either, or if any rights are given to the relators by either, they must claim such rights subject to the conditions imposed. Therefore, under the well-settled rules that: " Mandamus is never granted in anticipation of a supposed omission of duty, however strong the presumption may be that the persons whom it is sought to coerce by the writ will refuse to perform their duty when the proper time arrives. It is therefore incumbent on the relator to show actual omission on the part of the respondent to perform the required act, and, since there can be no such omission before the time has arrived for the performance of the duty, the writ will not issue before that time. In other words, the relator must show that the respondent is actually in default in the performance of a legal duty then due at his hands, and no threats or predetermination can take the place of such default before the time arrives when the duty should be performed, nor does the law contemplate such a degree of diligence as the performance of a duty not yet due." The relators must fail in

this action. (*State* v. *Gracey,* 11 Nev. 233; *State* v. *Rising,* 15 Nev. 164; 2 Spell. Extr. Relief, 1385; High, Extr. Rem., sec. 12.) This court has also held that the writ should not issue unless the relators show a clear legal right to the relief demanded. (*State* v. *La Grave,* 22 Nev. 419, 41 Pac. 115.)

But it is claimed by the relators that the judgment and decree of injunction set up in the answer is absolutely void —a nullity—and of no binding force or effect against the respondents, for the reason that the district judge who presided at the trial was an inhabitant of the city of Reno, and the owner of property situated therein, subject to taxation, and therefore had such an interest in the suit as to disqualify him from acting in the case. Our statute contains a provision, common to nearly all states, prohibiting a judge acting in any action or proceeding to which he is a party, or in which he is interested. (Gen. Stats. 2464.) This court has held that the rule of the common law which made the action of a judge interested in the case an irregularity or error, to be corrected upon an appeal by a reversal of the judgment, had been so changed by our statutory provision as to render such a judgment not only voidable, but void. (*Frevert* v. *Swift,* 19 Nev. 364, 11 Pac. 273.) By the facts shown, was the district judge disqualified? This question has been very fully and ably discussed by the Supreme Court of California in *Meyer* v. *City of San Diego,* 53 Pac. 434. That action was instituted. for the purpose of setting aside, as illegal and void, a contract of the city involving a large expenditure of money of the city, to be obtained by the sale of its bonds, and to enjoin the issuance and sale of the bonds to carry out the alleged illegal and void contract. The bond issue had been voted at a special election, called under an ordinance of the city, submitting to the electors the proposition. The law under which the election was held, among other matters, directed the municipal authorities to levy and collect an annual special tax sufficient to pay interest and provide a sinking fund for the ultimate redemption of the bonds. The practice act of that state disqualifying the judge contains the same provisions as our act above cited. A motion for a change of venue because of the disqualification of the trial judge was made, upon the showing that he was the owner of

real estate situated and taxed in the city of San Diego for
municipal purposes, and taxable for the payment of the
bonded indebtedness growing out of the matters then in
litigation.

The supreme court, in discussing the question raised by
the motion for the change of venue, after discussing many
authorities, say: "Thus, the interest which one has in a
public question, merely because he is a member of the civic
body to be affected by the question, is not the interest which
the law has in mind. In the case from which we have just
quoted, the judge in probate was not held to be disqualified
because, in a will before him, there was a bequest of money
to trustees, to be devoted to the use and benefit of indigent
persons in certain towns, of one of which the judge was an
inhabitant. * * * And so, in *Sauls* v. *Freeman*, 24 Fla.
209, 4 South. 525, the fact that the circuit judge, with other
registered voters of the county, had signed a petition addressed
to the county commissioners, asking for a change of the
county site, did not disqualify him, for interest, from sitting
in a mandamus proceeding to compel the commissioners to
call an election upon the question. In these and like cases
the so-called interest of the judge is found to be remote, doubt-
ful, and speculative—in no way certain in fact, nor suscepti-
ble of precise measurement. But, upon the other hand,
where, in any litigation, there is any certain, definable,
pecuniary or proprietary interest or relation, which will be
directly affected by the judgment that may be rendered, in
every such case, without exception, so far as an exhaustive
examination of the authorities goes, the disqualification of
the judge is held to exist.

"Has the judge any pecuniary or personal right or privi-
lege, directly affected by, or immediately dependent upon,
the result of the case? As that question is answered, so is
answered the question of his disqualification for the interest
which we have been considering. * * * Even more imme-
diate and direct is the interest of the judge in the case at
bar than that which appeared in the North Bloomfield Min.
Co. Case, 58 Cal. 315. The disqualification does not spring
from the fact that the judge is a citizen, inhabitant, and tax-
payer of the city of San Diego, nor yet from the fact that the

municipality is a party litigant in the action.   It arises from
the circumstance that he owns property within the city,
which may or may not be liable for the burden of a special
tax for the period of forty years, as he shall decide.   The
validity of this tax is directly called in question.   The judge
himself, under the circumstances shown, could have insti-
tuted, as plaintiff, this identical action.   *   *   *   The judg-
ment which he renders in the case will be binding upon his
rights and his property.   His interest is in the outcome of
the litigation, and it is a direct, measurable, pecuniary
interest."

Mr. Justice McFarland, concurring in the judgment of the
court, emphasizes the rule laid down, and pointedly marks
the distinction between the case at bar and a case where a
city in which the judge is a taxpayer is a party, and where
there is a mere possibility that a judgment against the city
might result in an increased levy of taxes, and a judgment
in favor of the city might bring a reduction of taxation.   He
says:   " In the latter case, and in others that could be men-
tioned, where a similar principle applies, the interest is too
shadowy, indirect, remote, and contingent to be within the
rule that a man cannot be a judge in his own case."   After
citing authorities, he concludes:   " But in the case at bar the
interest of the judge was not indirect, remote or contingent.
It directly involved the immediate imposition of a special
annual tax upon his property to continue for forty years."
(53 Pac. 436.)

It will be observed that the trial judge was held to be dis-
qualified because the facts showed a direct pecuniary interest
of the judge in the suit.   It directly involved the immediate
imposition of a special annual tax upon his property, to con-
tinue for a number of years.

The act incorporating the city of Reno confers authority
upon the city council to issue the bonds and create the
indebtedness for the purpose of constructing a system of
water works.   There is no authority given the city council,
in express terms, to tax the property situated within the city
for the purpose of providing means of paying the interest,
and the ultimate redemption of the bonds.   If such power or
authority exists, it arises by implication alone.   That the

legislature did not deem it necessary to confer such power or authority, by direct terms, is found in the last clause of section 34 of said act—the same section wherein authority is given to create the bonded indebtedness for the purpose of constructing a system of water works, by which the city council are directed to provide for the payment of the principal and interest of the bonds, and are empowered to provide by ordinance for the distribution of water to the inhabitants of the city, upon such reasonable terms as they shall deem expedient. Under the provisions of this act, it might never become necessary to tax any of the property within the city for the purpose of raising funds to discharge the interest and for the ultimate redemption of the bonds, as it was evidently expected that the interest account might be met, and the sinking fund created, from water rates established by the city council.

Applying the rule of the California case above cited, it can be said that the interest of the trial judge in the case is too shadowy, indirect, remote, and contingent, to disqualify him from sitting; that his interest in the result of the litigation is not direct, measurable, or pecuniary.

It is not necessary to pass upon other questions discussed by counsel, or to determine the rights of the intervenor, if he has any, as the peremptory writ must be denied, and the proceedings dismissed.

It is so ordered.