[No. 1609.]

C. H. E. HARDIN, PETITIONER AND RESPONDENT, *v.* J. W. GUTHRIE, ASSESSOR OF HUMBOLDT COUNTY, NEVADA, APPELLANT.

MANDAMUS—ASSESSMENT OF TAXES—REASSESSMENT. 1. Under Comp. Laws, 1084, requiring the assessor, between the date of the tax levy and the first Monday in September in each year, to assess all property in his county subject to taxation, *mandamus* will not lie to compel the assessor to make the assessment on petitioner's property in compliance with his demand on a particular day in July, though the petitioner alleged that he had refused and would continue to refuse, to make any assessment, the writ never being awarded in anticipation of a supposed omission of duty.

2. *Mandamus* will not lie to compel the assessor, after once making a valuation of property for the purposes of taxation, to make a revaluation, though the court finds the valuation fixed to be excessive.

APPEAL from the Fifth Judicial District Court, Humboldt County; *S. J. Bonnifield, Jr.*, Judge.

*Mandamus* by C. H. E. Hardin against J. W. Guthrie, Assessor of Humboldt County. From a judgment awarding the writ, defendant appeals. **Reversed**.

The facts sufficiently appear in the opinion.

*William Woodburn*, Attorney-General, for Appellant:

I. There is no provision of the revenue laws of this state giving the petitioner the right to demand of the assessor of

Humboldt county on the 16th day of July, 1901, to determine the true cash value of the property described in petitioner's affidavit.   Section 1084 of the revenue act approved March 23, 1891, provides that, between the date of the levy of taxes and the first Monday of September in each year, the county assessor shall determine the true cash value of all taxable property in his county.   Section 1078 of the act provides that the board of county commissioners shall, on or before the first Monday of March of each year, fix the rate of taxes for each year.   These two sections are still in force, not being repealed by the act of March 16, 1901, which provides for a more uniform valuation and assessment of property in this state, and which the court below decided to be unconstitutional. It is therefore clear that the assessor of Humboldt county had the absolute right to exercise his discretion as to the time between the first Monday of March, 1901, and the first Monday of September, 1901, to determine the true cash value of the yearlings belonging to said petitioner.   Therefore, there was no duty imposed by law upon the assessor to comply with the request of the petitioner made on the 16th day of July, 1901.   It is only in cases where an officer has no discretion that the proceeding by *mandamus* can be resorted to. I call the attention of the court to the two following cases: *State* v. *Gracey*, 11 Nev. 233–234; *State* v. *Rising*, 15 Nev. 166, which conclusively show that this application for a writ of mandate should have been denied.

II.   In the case of *The State* v. *V. & T. R. R. Co.*, reported in Volume 23 of the Nevada Reports, the court, in referring to the manner of the assessor in estimating the value of the company's road, uses the following language:   "In making the assessment he seems to have looked the property over and to have come to the general conclusion that it was worth the value he placed upon it.   This would be all right as far as the assessment was concerned if he hit it right, because the law does not require the assessor to act upon any particular kind of evidence."   The assessor hit it right by assessing the said cattle at their true cash value.   The petitioner has no cause to complain if the assessor hit it right, and ought not to vex the courts with applications of this character.

III.   It is for the legislature to decide in what proportions and by what processes and instrumentalities taxes shall be assessed and collected.   (*St. Louis* v. *Ferry Co.*, 11 Wall. 423, 429; *State* v. *C. P. R. R. Co.*, 21 Nev. 264.)   The legislature has the power to determine the value of the property to be assessed and the power of discrimination in selecting agents through which it may fix the taxable values of the state, and can delegate this power to others.

IV.   The legislature has the right to devise and carry into effect a distinct scheme of taxation with different tribunals in the proceeding to value it.   The legislature had the power to create the board of assessors, there being no prohibition in the constitution against its creation.   (*Van de Griff* v. *Haynie*, 28 Ark. 270; *Sawyer* v. *Dooley*, 21 Nev. 399-400.)

*James F. Dennis*, for Petitioner:

I.   There was no pretense on the part of respondent, in the court below, that he had assessed petitioner's cattle, in his official capacity, at all, but, on the contrary, he testified that he had refused to do so, and would continue to refuse to do so, unless compelled by the writ applied for, and he further testified that $17 per head for the petitioner's cattle was largely in excess of their actual cash value, and that if he, the said assessor, was determining their value, he would not place them at a greater value than $14 per head.

II.   The legislature cannot delegate to any person or body, the power to determine what the law shall be, except when authorized by the constitution so to do.   (*Anderson* v. *Manchester Fire Ins. Co.*, 59 Minn. 182; 50 Am. St. Rep. 400; *O'Neil* v. *American Fire Ins. Co.*, 166 Pa. St. 72; 45 Am. St. Rep. 650; *State* v. *Mayor and Council of Des Moines*, 103 Iowa, 76; 64 Am. St. Rep. 156; *Brewer Brick Co.* v. *Inhabitants of Brewer*, 62 Me. 62.)

III.   The guaranty of the due process of law is not confined to judicial proceedings, but operates as a restriction on every branch of civil government; it confers no new rights upon the citizens, and only secures those belonging to him, when it was incorporated in the constitution.   (*Chicago R. R. Co.* v. *Chicago*, 166 U. S. 226; *In re Ziebold*, 23 Fed. Rep. 791; *Holden* v. *Hardy*, 169 U. S. 366; *Meyers* v. *Shields*, 61

Fed. Rep. 713; *Murray* v. *Hoboken Land Co.*, 18 How. U. S. 272.)

IV.　The legislature .can no more arbitrarily impose an assessment for which property may be taken and sold than it can render a judgment against a person without a hearing. It is a rule founded on the first principle of natural justice, older than written constitutions, that a citizen shall not be deprived of his life, liberty or property, without an opportunity to be heard in defense of his rights. (*Stewart* v. *Palmer*, 74 N. Y. 183; 30 Am. Rep. 289, and cases cited.) The foregoing case from which we have quoted is an instructive one, and it has been cited and approved in a long line of decisions, on this question, including nearly every state in the union, as well as by the United States Supreme Court and the circuit courts.　The learned judge there says:　"No case, it is believed, can be found in which it was decided that this constitutional guaranty did not extend to cases of assessments."　It is cited and approved in the cases of *Burns* v. *Multommah R. R. Co.*, 15 Fed. Rep. 117; *Santa Clara Co.* v. *S. P. R. R. Co.*, 18 Fed. Rep. 385; *Brown* v. *City of Denver*, 3 Pac. Rep. 495; *Bowman* v. *Santa Barbara Co.*, 4 Pac. Rep. 31.

*William Woodburn*, Attorney-General, and *Trenmor Coffin*, for Appellant, in reply:

I.　Universal practice had established, at the time our constitution was adopted, that the provision that a man shall not be deprived of his property without due process of law was not understood as applicable to proceedings by the state to obtain from citizens their proper contributions to the expense of administering the government.　(*High* v. *Shoemaker*, 22 Cal. 370; Blackwell on Tax Titles, cases cited, 40, 41.)

II.　The assessors may act on their own knowledge and judgment without hearing evidence, and make the valuation in the exercise of such judgment upon all the information in their possession.　(*State* v. *C. P. R. R. Co.*, 10 Nev. 47; *St. Louis R. Co.* v. *Surrell*, 88 Ill. 535.)

III.　The means and measures by which an assessor has reached a conclusion will not be inquired into judicially. (*Snell* v. *Fort Dodge*, 45 Iowa, 564; *Du Page County* v. *Jenks*, 65 Ill. 275.)

IV.  If the opportunity to object is afforded to the taxpayer in an action for the collection of the tax, he is not deprived of his property without due process of law.  (Am. & Eng. Ency. Law, 55; *State* v. *C. P. R. R. Co.*, 21 Nev. 260.)

V.  The legislature need not prescribe the details nor perform the administrative functions involving the exercise of the power to tax.  It is sufficient if it originates the proceedings and prescribes the rule of action, leaving the details to administrative officers.

By the Court, MASSEY, C. J.:

The respondent instituted *mandamus* in the district court to compel the appellant, the assessor of Humboldt county, "to immediately determine the true cash value" of certain cattle owned by respondent, and "to assess the same at a uniform rate of valuation in comparison with like property situated in said county."

It is shown by the petition, *inter alia*, that on the 16th day of July, 1901, the respondent applied to the assessor to have him determine the true cash value of said cattle, and to assess the same at their true cash value, and at a uniform rate; that the assessor refused on said date to determine the true and actual cash value of said property for the purpose of taxation, or to assess the same at a uniform and equal rate of assessment; that he refuses and will continue to refuse to so fix the actual cash value of the property, or to exercise any judgment, official or otherwise, upon the value of said property.

In response to the alternative writ the assessor answered denying that it was his official duty on the 16th day of July, 1901, then and there to determine the value of said property, or at other times except upon some day between the date of the levy of the taxes for the year 1901 and the first Monday in September thereof.  He further alleged by his answer that on the 18th day of July, 1901—two days after the respondent's demand and the filing of the application for the writ—acting in his official capacity, and in conformity with the requirements of that certain act entitled "An act to provide for a more uniform valuation and assessment of property in

this state," approved March 16, 1901 (Stats. Nev. 1901, p. 61),
did fix the value of the property at $17 per head, as required
by the state board of assessors at a meeting held in April,
1901, under said act, and that he believes that the valuation
of $17 per head of said cattle approximates more closely the
average value thereof than any other amount.

Upon the issues made there was a trial, and a judgment
awarding the peremptory writ against the appellant, from
which judgment he has appealed.

The evidence is not in the record, but the court found,
in effect, that the averments of the petition are true, and
that the valuation fixed was above the actual cash value of
the property.  As a conclusion of law the court found that
the act above cited is unconstitutional.  Presumably, this
proceeding was instituted for the express purpose of deter-
mining the constitutionality of the act cited, but no such
question is presented by the record on appeal.

The first question presented—a question of law, rather
than a question of fact—must reverse the judgment of the
trial court.  It is the settled rule of this court that *mandamus*
will not lie except upon a showing that the petitioner has a
clear legal right to that sought by the proceeding.  (*State* v.
*LaGrave*, 22 Nev. 417, 41 Pac. 115; *State* v. *Stoddard*, 25
Nev. 452, 62 Pac. 237.)

Such showing is not made either by the petition or by the
findings.  Valuation—one of the statutory steps of assess-
ment—or the assessment of the respondent's property upon
demand on the 16th day of July, 1901, was not an act espe-
cially enjoined by any law of this state as a duty resulting
from appellant's office as assessor.

By Section 8 of our revenue act (Comp. Laws, 1084), upon
which the respondent bases his right, it is not required of
appellant, as assessor, to value or assess any property upon
application or demand at any specified time.  He is required
between the date of the tax levy and the first Monday in
September in each year to assess all property subject to tax-
ation in his county.  No matter what reasons the appellant
may have given for his refusal to act at the time of the
demand, it is well settled by the decisions of this court that
*mandamus* is never granted in anticipation of a supposed

omission of duty, however strong the presumption may be
that the person sought to be coerced by the writ will not per-
form his duty in the proper time. (*State* v. *Noyes*, 25 Nev.
32; 56 Pac. 946; *State* v. *Gracey*, 11 Nev. 223; *State* v. *Ris-
ing*, 15 Nev. 166.)

Counsel for respondent contends that the case of *State* v.
*Arrington*, 18 Nev. 412, 4 Pac. 735, does not support this view
of the law, but an examination of that case shows a marked
distinction between it and the case at bar. In that case the
board of county commissioners had acted, and acted wrong-
fully. In the case at bar the assessor had not acted, and was
not required to act, upon the demand of respondent at the
time the demand was made, or even at the time the suit was
instituted; and in this proceeding it may as well be doubted,
even if the act of 1901, *supra*, is unconstitutional—a point
upon which we express no opinion—whether *mandamus*
would lie against the assessor, even conceding that he had
acted wrongfully by making an excessive valuation.

Again, by the averments of the answer it is shown that
the assessor, within the time prescribed by Section 8 of our
revenue law, upon which respondent relies, valued the prop-
erty for the purposes of taxation.

It is true, the court finds that the valuation fixed is excess-
ive, and by its judgment directs the appellant to do again
what he has shown by his answer he has done—exercised his
judgment. *Mandamus* will lie to compel judicial and *quasi*-
judicial officers to act, but it can never be invoked to correct
or review errors of judgment or decision when given. In
other words, the court cannot say in *mandamus* that the par-
ticular judgment or conclusion is wrong; it cannot substitute
its judgment for the judgment of the officer or tribunal
sought to be coerced. (*State* v. *Board of Comrs. of Eureka
Co.*, 8 Nev. 309; *Floral Springs Water Co.* v. *Rives*, 14 Nev.
431; *State* v. *Wright*, 4 Nev. 119; *Humboldt Co.* v. *Lander
Co.*, 22 Nev. 71, 35 Pac. 300; *State* v. *Murphy*, 19 Nev. 89, 6
Pac. 840; *Hoole* v. *Kinkead*, 16 Nev. 217.)

It is only necessary to suggest in this connection that, if
the act of 1901, *supra*, is unconstitutional for the reasons
claimed, there is a board created by law to correct any error
of judgment of the assessor in fixing the valuation of prop-

erty for the purposes of taxation, to which board the respondent could have applied for redress, and, in case it refused to act, he might have compelled action by *mandamus*.

It necessarily follows that, the showing made by the petition and the finding of the court being insufficient to authorize the issuance of the writ, the judgment must be reversed, and the district court instructed to dismiss the proceeding.

Let judgment be entered accordingly.