[No. 2077]

THE STATE OF NEVADA, EX REL. J. F. ABEL, DEPUTY SUPERINTENDENT OF PUBLIC INSTRUCTION OF THE STATE OF NEVADA, PETITIONER, *v.* JACOB EGGERS, STATE CONTROLLER OF THE STATE OF NEVADA, RESPONDENT.

1. STATE GOVERNMENT—GENERAL APPROPRIATION ACTS—STATUTORY CONSTRUCTION.
    General appropriation bills, as indicated by their titles, are passed for the support of the state government, as the same is established by the constitution and general laws, and, as the life of such acts is limited to two years, it is not to be assumed that the legislature intended by such appropriation acts to accomplish changes or amendments in the general laws of the state.

2. STATUTORY CONSTRUCTION—GENERAL APPROPRIATION ACTS—CON-- STITUTIONAL LAW.
    Provisions in a general appropriation act for the support of the state government, providing for repeals or amendments of the existing general laws of the state, would be unconstitutional and void as contrary to the provisions of section 17 of. article 4 of the constitution, and are not germane to the title.

3. STATE GOVERNMENT—GENERAL APPROPRIATION ACTS—STATUTORY CONSTRUCTION.
    Provisions in general appropriation acts are *in pari materia* with the general acts controlling the purposes for which the

appropriation is made and are to be construed in connection therewith. · Unless there is such a manifest repugnance as to leave no room for reasonable construction otherwise, they will be construed so as to carry out the provisions of the general law.

4. STATE GOVERNMENT—GENERAL APPROPRIATION ACTS—STATUTORY CONSTRUCTION — TRAVELING EXPENSES OF DISTRICT DEPUTY SUPERINTENDENT OF PUBLIC INSTRUCTION.

Sections 66–70 of the general appropriation act of 1913, making provisions "for actual traveling expenses" for each of the five deputy superintendents of public instruction for the years 1913 and 1914, should be read in connection with section 13 of the general act relating to public schools (Rev. Laws, 3251) providing that "all claims for traveling expenses, including the cost of transportation and cost of living, * * * while absent from their places of residence, * * * shall be paid from the general fund of the state." The fact that the word "actual" was used in the general appropriation act of 1913, in contradistinction to the provisions of previous general appropriation acts, will not be deemed sufficient to manifest an intent upon the part of the legislature to limit the purpose of such appropriation while the amount appropriated is the same as made in previous appropriation bills, and as recommended to the legislature by the state controller as required by law.

5. STATUTORY CONSTRUCTION—REPEAL BY IMPLICATION.

Repeals by implication are not favored and occur only where there is such an irreconcilable repugnancy that the two acts cannot stand together.

6. STATUTORY CONSTRUCTION.

Statutes relating to the same subject-matter will, if possible, be so construed as to give effect to both.

7. STATUTORY CONSTRUCTION.

Courts in interpreting statutes will so construe them as to carry out the manifest purpose of the legislature, even though it may be necessary to disregard the literal meaning of certain of the language used.

8. STATUTORY CONSTRUCTION.

Where the language of a statute is susceptible of two constructions, that construction should be applied which will make it effective.

9. MANDAMUS—REMEDY AT LAW.

*Mandamus* will not issue to compel the state controller to draw a warrant in favor of an unliquidated demand against the state approved by the board of examiners, as an adequate remedy exists by civil suit under the provisions of section 5653 of the Revised Laws.

ORIGINAL PROCEEDING in *mandamus* by J. F. Abel, Deputy State Superintendent of Public Instruction, to compel the State Controller to draw his warrant for a

certain claim for expenses incurred while absent from his home in the discharge of his duties. **Writ denied.**

The facts sufficiently appear in the opinion.

*Brown & Belford*, for Petitioner.

*Geo. B. Thatcher*, Attorney-General, for Respondent.

By the Court, TALBOT, C. J.:

This is an original proceeding in *mandamus* to compel the respondent, the state controller, to draw his warrant for a claim approved by the state board of examiners for hotel and kindred expenses incurred by the relator in the discharge of his official functions as deputy superintendent of public instruction when absent from the place of his residence. The facts stated in the petition are admitted by written stipulation, and a demurrer has been interposed.

1. It is the duty of the state controller to refuse to draw warrants in cases where payment is not authorized by law, and naturally if there is a great doubt he takes the course which will protect him and the state treasury. On his behalf it is contended that there is no appropriation for the payment of these expenses in the general appropriation act for the years 1913 and 1914. (Stats. 1913, c. 139.) Sections 66 to 70, inclusive, make appropriations "for actual traveling expenses" for each of the five deputy superintendents of public instruction, in amounts varying from $1,000 to $1,500.

Differently from prior appropriation bills, the word "actual" has been inserted in this general appropriation bill ahead of each of the provisions for "traveling expenses" for the governor and attorney-general, for the state superintendent of public instruction, for the deputy superintendents of public instruction in different districts, for district judges, and for the mine inspector and his deputy. It is the contention of respondent that the items for hotel charges are not "actual" traveling expenses under the provisions of the appropriation act, and to

support this contention reliance is had on the case of *State* v. *LaGrave*, 23 Nev. 88.

Section 13 of "An act concerning public schools, and repealing certain acts relating thereto," approved March 20, 1911 (Stats. 1911, c. 133), which was passed long after the decision in that case, and which we have to consider here, provides that: "All claims for the traveling expenses, including the cost of transportation and cost of living, of each deputy superintendent of public instruction while absent from their places of residence, together with the necessary office expenses, shall be paid from the general fund of the state." (Rev. Laws, 3251.)

These appropriation bills, as indicated by the titles, are passed for the support of the state government, and are not legislative acts changing the substantive or general laws of the state. The civil government of the state is established by the constitution and general statutory provisions; and it is for the support of such government that general appropriation bills are enacted. It is not expected that changes and amendments in the general laws of the state will be made in general appropriation bills, and the life of such acts is only two years.

2. Although failure to appropriate will prevent recovery from the state for traveling expenses, if the legislature in the most explicit terms had designated in the general appropriation bill that the statute providing for the payment of traveling expenses for different officers should be repealed, or should be suspended for two years, such provisions or enactments would be void under section 17, article 4, of the constitution, which provides: "Each law enacted by the legislature shall embrace but one subject, and matter properly connected therewith, which subject shall be briefly expressed in the title; and no law shall be revised or amended by reference to its title only; but, in such case, the act as revised, or section as amended, shall be reenacted and published at length."

Any provision for the repeal or enactment of a law authorizing payment of the traveling expenses of an officer would not be germane to this act, which is

entitled "An act making appropriations for the support of the civil government of the State of Nevada for the years 1913 and 1914," for the title does not indicate a purpose to repeal or amend any such existing law. (*State* v. *Gibson,* 30 Nev. 356; *State* v. *Board of County Commissioners of Storey County,* 22 Nev. 399; *State* v. *Silver,* 9 Nev. 231; *Chase* v. *Rogers,* 10 Nev. 253, 21 Am. Rep. 738.)

Any act to suspend or amend one or more acts would not be effective unless the title of the amendatory act were pertinent; and if it were sought to amend two or more acts by one amendatory act, it would not be valid or amend any act to which the title of the amendatory act was not pertinent. (*State* v. *Ah Sam,* 15 Nev. 27, 37 Am. Rep. 454; *Ex Parte Hewlett,* 22 Nev. 333; *State* v. *Commissioners,* 22 Nev. 399; *State* v. *Hoadley,* 20 Nev. 318.)

**3.** It must be conceded that the use of the word "actual" in relation to traveling expenses, used in the several sections of the general appropriation bill, if considered alone, affords room for argument that the legislature thus manifested an intent to restrict the purposes for which the appropriation was made. While the words "actual traveling expenses," considered alone, may give the inference that hotel bills are not to be allowed or paid, the fact that the legislature appropriated the same amount for "actual traveling expenses" as designated in the general appropriation bill at the previous session for "traveling expenses," raises a doubt or contrary inference that the legislature may have intended to appropriate enough to cover the payment of the hotel bills. If, unlimited or not considered in connection with existing laws, the literal language in appropriation bills were given effect, amounts larger than earned or provided by law might often be paid. But the language used in the appropriation bill is not the only language that is controlling in determining the legislative intent. In general appropriation bills appropriations are made in concise language, usually intended to be supplemented by more definite, existing statutes, and for the purpose of meeting

the expenses of the state government in accordance therewith.

Sections of the general appropriation act are *in pari materia* with the general acts controlling the purposes for which the appropriation is made. They are therefore to be considered in connection with the general provisions of law to which they relate, and unless there is such a manifest repugnance as to leave no room for reasonable construction otherwise, they will be construed so as to carry out the provisions of the general law. This is the view taken by this court in former decisions where the provisions of the general appropriation act had been called in question. (*State* v. *LaGrave, supra; State, ex rel. Fowler,* v. *Eggers,* 33 Nev. 535; *State* v. *Westerfield,* 23 Nev. 468.)

In the Fowler case an act of the legislature approved March 23, 1909 (Stats. 1909, c. 159), provided that the salary of the deputy attorney-general should be $2,400 a year, payable in the same manner as salaries of other state officers, which under an earlier statute was monthly. The general appropriation bill appropriated $4,800 for the salary of the deputy attorney-general for that and the succeeding year. It was held that the statute should be considered in connection with the appropriation bill, that it was not in the nature of a relief bill, and did not become effective until the date of the approval, and that instead of being entitled to the full $4,800, as appropriated, by the language of the appropriation bill the salary of the deputy attorney-general was limited by the statute, and was payable only at the rate of $200 per month after the special act providing for such salary came into force.

If, as provided regarding district judges before the amendment of 1907, allowing their necessary expenses at the place of holding court when away from home, the statute limited the payment of traveling expenses for deputy superintendents of public instruction to traveling expenses by public conveyance, or to "actual traveling expenses," we might well hold that living expenses could

not be paid by the state for lack of any provision for such payment, either in the statute relating to expenses or the general appropriation bill. Although there is room for difference of opinion as to whether the mere words "traveling expenses;" when considered alone, include more than fares or cost of transportation, or whether they would embrace the expense of berths and meals on the train, or hotel bills while on the trip, we see no reason for disapproving the close construction heretofore given by this court in State v. LaGrave, 23 Nev. 88, deciding that hotel bills of the superintendent of public instruction were not payable under the statute providing for "actual traveling expenses." We would not disagree with this contention of respondent in this regard if these words alone controlled and were to be construed in the appropriation bill or an act of the legislature, without reference to other statutory language. Notwithstanding this decision, the legislature by enactment of a later statute could provide for the payment of the living expenses of these officials when away from home.

Unquestionably the legislature has the power to abolish or restrict the payment of traveling expenses or otherwise change the law, but the proper way for manifesting such an intent is by an amendment or repeal of the existing statute. Clearly the words inserted in the appropriation act do not and could not accomplish this purpose. Whether an appropriation was or was not made, the law still remains that deputy superintendents are entitled to be paid their expense for "cost of living" while absent from their place of residence in the discharge of their duties.

4. The question then is: Did the legislature fail to make an appropriation to cover certain expenses which deputy superintendents are entitled to claim from the state as a matter of law? The amount appropriated for the "actual traveling expenses" of the deputy superintendent was the same as appropriated at the previous session for the "traveling expenses" of these officials.

It was the amount recommended by the state controller in his report to the legislature, made pursuant to law, in estimating the expenses for the maintenance of the state government which the legislature would be expected to provide. If there had been a reduction in the appropriation, it might be argued therefrom that the legislature did not at this time intend to provide for any expenses other than traveling expenses in the restricted sense. If this construction is to be placed upon provisions of the appropriation act, then we must attribute to the legislature a purpose to cause the deputy superintendents to perform a greater extent of traveling than they had been accustomed to do in years past, and to contribute from their private resources a very much larger amount than they would be called upon to contribute if they did no more traveling than in the years past, when all of their expenses were paid by the state. It does not seem probable that such a purpose or result was contemplated by the legislature. The same would be true regarding other officers for whose "actual traveling expenses" appropriations are made.

As, beyond question, the legislature had made the cost of living of the deputy superintendents of public instruction, while absent from their places of residence, a part of the traveling expenses which they are entitled to be allowed by the state, we conclude that the provision in the general appropriation bill for "actual traveling expenses" means the actual traveling expenses as now allowed by the general law, including the cost of living actually incurred while away from home performing official duties, not exceeding the amount of the appropriation, and that the payment of such expenses is not limited by the decision of this court construing an earlier act which did not provide for the cost of living. Under such a construction the state may properly pay the cost of living of the deputy superintendents while away from home, in compliance with the later statute as enacted by the legislature, which was not repealed nor suspended by this general appropriation bill.

In the LaGrave case the court was construing in connection with the appropriation bill a statute providing for the payment of the actual traveling expenses of the state superintendent of public instruction which did not provide for hotel bills or living expenses, and which has been superseded by a different law, and here we are construing in connection with an appropriation bill, and giving effect to an act of the legislature which has not been repealed, and which definitely provides that the cost of living of the deputy superintendents of public instruction while absent from their places of residence shall be paid from the general fund of the state. In order to arrive at a different conclusion, it would be necessary to disregard the general provisions of the law, which should be mainly considered in construing doubtful sections of the appropriation bill. If upon consideration of the language in the general appropriation bill in connection with the statute a doubt arises, naturally we conclude that the legislature intended to comply, instead of to fail to comply, with the statute. A failure to make any appropriation for or payment of the traveling expenses for two years would, in effect, amount to a repeal or suspension of the law for at least that period.

To hold that under these circumstances the legislature did not intend to make an appropriation for the payment of the living expenses would be equivalent to saying that, contrary to the good faith so generally kept or practiced by the state in complying with the laws, the legislature, at least for two years, intended not to meet the obligation imposed by statute to pay the hotel bills of the district deputy superintendents.

5. Repeals by implication are not favored, and occur only if there is an irreconcilable repugnancy, where the two acts cannot stand together. (*State* v. *Donnelly*, 20 Nev. 214; *Walley's Estate*, 11 Nev. 260.) The same liberal rule of construction ought to apply in favor of a statute which might otherwise have its clear provisions made inoperative or be suspended.

**6.** It is also a well-recognized principle that statutes relating to the same matter which can stand together should be construed so as to make each effective. (*State* v. *Donnelly*, 20 Nev. 214; *State* v. *Rogers*, 10 Nev. 319; *State* v. *Hoover*, 5 Nev. 141.)

**7.** In the interpretation of statutes the courts so construe them as to carry out the manifest purpose of the legislature, and sometimes this has been done in opposition to the words of the act. (*Gibson* v. *Mason*, 5 Nev. 283.)

**8.** If different meanings may be given to a statute, the one should be applied which will make it effective. (*State* v. *Martin*, 32 Nev. 198; *Hettel* v. *District Court*, 30 Nev. 382, 133 Am. St. Rep. 731.)

**9.** Notwithstanding relator may be entitled to recover his living expenses from the state, he cannot prevail in this proceeding because he has a remedy by an ordinary civil action. Section 5695 of the Revised Laws provides that the writ of *mandamus* may be issued by the supreme court, a district court or a judge of the district court, to compel the performance of an act which the law especially enjoins as a duty resulting from an office, trust or station; the following section directs that "this writ shall be issued in all cases where there is not a plain, speedy, and adequate remedy in the ordinary course of law," and it has often been held that the writ will not issue if such remedy exists. (*State, ex rel. Gleason,* v. *Jumbo Ex. M. Co.*, 30 Nev. 192, 133 Am. St. Rep. 715, 16 Ann. Cas. 896; *Mayberry* v. *Bowker*, 14 Nev. 340; *State* v. *Boerlin*, 30 Nev. 473; *State* v. *Langan*, 29 Nev. 459; *Van Riper* v. *Botsford*, 29 Nev. 465.) In *State* v. *Storey County*, 22 Nev. 263, it was said that the writ of *mandamus* should be resorted to only when the ordinary remedies do not afford adequate relief and without it there would be a failure of justice.

Section 21 of article 5 of the constitution provides that the governor, the secretary of state, and the attorney-general shall constitute a board of examiners to allow

claims against the state, except salaries and compensation of officers fixed by law.

Section 4459, Revised Laws, provides: "All claims against the state for services or advances, for payment of which an appropriation has been made by law, and which have been by law authorized, but of which the amount has not been liquidated and fixed, may be presented to the board of examiners in the form of an account or petition, and in such manner as said board shall prescribe by their rules, the claimant may present his evidence to sustain said demand, which evidence, if oral, shall be reduced to writing, and they shall either reject or allow the claim, in whole or in part, within thirty days from its presentation, and shall indorse upon the same, if allowed in whole or in part, over their signature: 'Approved for the sum of _____ dollars,' and shall immediately transmit the same so indorsed, together with all the evidence received by them relating thereto, to the controller of state. The controller shall not allow or draw his warrant for any claim of the class described in this section, which shall not have been approved by said board, or a greater amount than allowed by said board, except when said claim shall not have been acted upon by said board within thirty days prior to its presentation."

Section 5653 provides: "An officer or person who has presented a claim against the state for services or advances authorized by law, and for which an appropriation has been made, but of which the amount has not been fixed by law, to the board of examiners, which claim said board or the state controller has refused to audit and allow, in whole or in part, may commence an action in any court in Ormsby County having jurisdiction of the amount, for the recovery of such portion of the claim as shall have been rejected."

Section 5655 provides: "Upon the presentation of a certified copy of a final judgment in favor of the claimant in any such action, the controller shall draw his warrant in favor of the claimant for the amount awarded by the judgment."

Under these statutes the relator has an· adequate remedy by ordinary action at law in Ormsby·County:  · The petition for writ of *mandamus* is denied.